LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTINA TUEROS and HERMEL LOPEZ, *on behalf of themselves the FLSA Collective and the Class,*<br><br>Plaintiffs,<br><br>v.<br><br>URBAN HEALTH PLAN, INC.,<br><br>Defendant. | Case No:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiffs CHRISTINA TUEROS and HERMEL LOPEZ, (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendant, URBAN HEALTH PLAN, INC. ("Defendant") and states as follows:

**INTRODUCTION**

1.  Plaintiffs allege that, pursuant to the Federal Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, (2) compensation for unpaid off-the-clock work, including unpaid overtime premium, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

1

2. Plaintiffs allege that, pursuant to the New York Labor Law, that they and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime wages, (2) unpaid wages due to time-shaving, (3) unpaid overtime due to time-shaving, (4) unpaid spread of hours premium, (5) liquidated damages (6) statutory penalties and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court because the Plaintiffs reside in Queens County.

## PARTIES

5. Plaintiff, CHRISTINA TUEROS, is a resident of Queens County, New York.

6. Plaintiff, HERMEL LOPEZ, is a resident of Queens County, New York.

7. Upon information and belief, Corporate Defendant, URBAN HEALTH PLAN, INC., is a domestic not-for-profit corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 1065 Southern Boulevard, Bronx, NY 10459. Defendant provides a variety of medical, dental, and health services, and has several locations throughout New York City:

   a) **El Nuevo San Juan –** 1065 Southern Boulevard, Bronx, New York 10459
   b) **WIC Program – Women, Infants, Children and UHP** - 953 Southern Boulevard, 3rd floor, Bronx, NY 10459
   c) **School-Based Health Program** - 628 Tinton Ave, Bronx, NY 10455
   d) **Urban Health Plan Dental Services at Kips Bay** - 1930 Randall Avenue, Bronx, NY 10473

2

e) **Simpson Pavilion** - 1054 Simpson Street Bronx, NY 10459

f) **Adolescent Health and Wellness Center** - 960 Southern Boulevard, Bronx, NY 10459

g) **Bella Vista Health Center** - 890 Hunts Point Avenue, Bronx, NY 10474

h) **Bella Vista Community Health Center** - 882-886 Hunts Point Avenue, Bronx, NY 10474

i) **Boricua Community Health Center** - 3209 Third Avenue, Bronx NY 10451

j) **Peninsula Community Health Center** - 1967 Turnbull Avenue, 2nd Floor, Bronx NY 10473

k) **Plaza Del Castillo Health Center** - 1515 Southern Boulevard, Bronx, NY 10460

l) **Plaza Del Sol Family Health Center** - 37-16 108th Street, Corona, NY 11368

m) **St. Lawrence Community Health Center** - 1764 Westchester Avenue, Bronx, NY 10472

n) **Project H.O.P.E Workforce Development** - 854 Hunts Point Avenue, Bronx, NY 10474

o) **Health Information Place** - 1075 Southern Boulevard, Bronx, NY 10459

p) **CitiCARES Community Health Center** - 154 West 127 Street, New York, NY 10027

**Vidal Guidance Center** - 4419 Third Avenue, Bronx, NY 10457

8. Urban Health Plan is operated by Defendants as a single integrated enterprise. Specifically, they are engaged in related activities, share common ownership and have a common business purpose.

a) Each Urban Health Plan location is engaged in the same business of operating medical and dental facilities in New York City.

b) Each Urban Health Plan location displays at the entrance of the facility that they are a division of Urban Health Plan, Inc.

    c) Urban Health Plan locations are advertised jointly on Defendant's website (https://www.urbanhealthplan.org/our-sites/).

    d) All Urban Health Plan locations utilize the same patient portal app.

    e) Urban Health Plan maintains centralized labor relations and human resources.

    f) All Urban Health Plan locations implement the same wage and hour policies and procedures established by Defendant.

    g) Urban Health Plan employees are interchangeable among their locations.

    h) Defendant centrally advertises career opportunities for Urban Health Plan. Applicants that are interested in employment at any Urban Health Plan location can apply on this website. (https://www.urbanhealthplan.org/career-center/).

9. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the New York Labor Law §§ 2 and 651.

10. At all relevant times, Plaintiffs were Defendants' employee within the meaning of the New York Labor Law §§ 2 and 651

11. At all relevant times, the Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

12. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendant.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

13. Plaintiffs bring their claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including phlebotomists, nurses' aides, technicians, patient service representatives, therapists,

community health workers, handymen, and janitors) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

14. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) their proper wages due to time-shaving. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

15. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

16. Pursuant to Article 9 of the New York Civil Practice Law and Rules, Plaintiffs bring this section as a class action, on behalf of all non-exempt employees, (including phlebotomists, nurses' aides, technicians, patient service representatives, community health workers, therapists, handymen, and janitors) who were employed by Defendant on or after the date that is six (6) years prior to the filing of the Complaint (the "Class" or "Class Members").

17. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the

calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of employees tasked with driving and delivering supplies amongst Defendant's locations, and who also number more than forty (40). Plaintiff, HERMEL LOPEZ is a member of both the Class and the Contract Subclass.

18. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, including (i) failing to pay overtime premium due to a policy of time shaving, (ii) failing to provide wage statements in compliance with the NYLL, and (iii) failing to provide wage and hour notices upon hiring and as required thereafter, pursuant to the NYLL.

19. With regards to Plaintiff HERMEL LOPEZ, and the Subclass, in addition to sharing all claims of Class Members, Defendants' also failed to reimburse Subclass Members their expenses incurred as part of their employment. Plaintiff HERMEL LOPEZ and Subclass Members were forced to pay out of pocket for tolls, gas, and vehicle expenses incurred with the performance of their necessary duties.

20. **Numerosity:** The potential number of persons in the Class is so numerous that joinder of all members would be unfeasible and impracticable. The disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because such information is presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class. Given the number of employees at any given time and the expected turnover during the six (6) year statutory

period at the Defendant's locations, the number of persons in the Class is estimated to be *at least* five hundred (500) individuals.

21. **Typicality and Commonality:** Plaintiffs' claims are common and typical of those claims which could be alleged by any member of the Class, and the relief sought is common and typical of the relief which would be sought by each member of the Class in separate actions. The Class Members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay them for all hours worked, including overtime premiums, due to a policy of time shaving, in violation of the NYLL. Defendant additionally failed to provide employees with proper wage statements in further violation of the NYLL. Defendant's company-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22. **Adequacy:** Plaintiffs are willing and able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the members of the Class. Plaintiffs will vigorously pursue this class action via attorneys who are skilled, experienced and competent in both employment litigation and class action litigation.

23. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against defendant. The nature of this action makes the use of the class action vehicle a particularly efficient and appropriate procedure to afford relief to Plaintiffs and other members of the Class for the wrongdoings alleged herein.

a. This case involves a large corporate defendant and a large number of individual Class members with many relatively small claims and common issues of law and fact. If each individual member of the Class were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage because, with its vastly superior financial and legal resources, it would be able to exploit and overwhelm the limited resources of each individual member of the Class.

b. In addition, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class; would establish incompatible standards of conduct for Defendant; would result in legal determinations with respect to the individual members of the Class would, as a practical matter, be dispositive of the interest of other individuals who are not parties to the adjudications; and/or would substantially impair or impede the ability of the individuals to protect their own interests.

c. Moreover, requiring each individual member of the Class to pursue an individual remedy would also discourage the assertion of lawful claims by members of the Class who would be disinclined to pursue an action against their employer, because of an appreciable and justifiable fear of retaliation. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

d. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for individual members of the Class to redress the wrongdoings they suffered.

e. Furthermore, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of the court system and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

24. **Predominance of Common Questions of Fact and Law:** Common questions of fact and law exist as to members of the Class which predominate over questions affecting only individual members of the Class, including but not limited to the following:

a) Whether Defendant employed Plaintiffs and Class Members within the meaning of the NYLL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding Plaintiffs and Class Members;

c) At what rates, subject to common methods of calculation, was and is Defendant required to pay Plaintiffs and Class Members for their work;

d) Whether Defendant paid Plaintiffs and Class Members for all hours worked under the NYLL;

e) Whether Defendant paid Plaintiffs and Class Members for all spread of hours premiums;

f) Whether Defendant paid Plaintiffs and Class Members all due overtime premiums under the NYLL; and

g) Whether Defendant provided proper wage statements.

25. Plaintiffs intend to send notice to all members of the Class as required by Article 9 of the New York Civil Practice Law and Rules.

## STATEMENT OF FACTS

*Claims of CHRISTINA TUEROS*:

26. In or about November 2014, Plaintiff, CHRISTINA TUEROS, was hired by Defendant and/or its predecessors, as applicable, to work as a receptionist at Defendant's Plaza del Sol location, with an address of 37-16 108th Street, Corona, NY 11368. Plaintiff TUEROS was

then transferred internally to work for Defendant's WIC Program – Women, Infants, Children and UHP located at 953 Southern Boulevard, 3rd floor, Bronx, NY 10459. Plaintiff TUEROS continued to work for Defendant until November 17, 2018.

27. From Plaintiff TUEROS' date of hiring until on or around January 2016, Plaintiff worked an average of fifty-eight (58) hours per week. Plaintiff was scheduled to work from 8:00 AM to 5:00 PM, six (6) days a week, but would often work later on an as needed basis.

28. From November 2016 until the end of Plaintiff TUEROS' employment, Plaintiff TUEROS worked an average of forty-two to fifty (46) hours per week. Plaintiff TUEROS was scheduled to work from 8:00 AM to 4:30 PM five (5) days a week, but would often work later on an as needed basis.

29. Plaintiff TUEROS was paid an hourly rate of $13.00 per hour for all hours worked, during Plaintiff TUEROS' employment her hourly rate was increased to $16.50 per hour.

30. Throughout her employment, Plaintiff TUEROS was not compensated for all hours worked. Plaintiff TUEROS was instructed to clock-out for meal breaks. On more than half of her work days Plaintiff was unable to take a meal break due to her workload. On days that Plaintiff did not take a break and she did not punch out, Defendant would still automatically deduct one hour from her pay. As a result, Plaintiff worked at least three hours each week, all of which were overtime hours, which were entirely uncompensated.

31. Two-to-three times per week, Plaintiff TUEROS would sign out, and only after signing out for the day, would be asked to continue working on tasks on an as needed basis. As a result of Defendant's scheme Plaintiff and Class members, who were similarly asked to work past their scheduled shifts, would an additional one to two (1-2) uncompensated hours each week.

11

32. Moreover, Defendant required Plaintiff TUEROS and Class Members to appear for their scheduled shifts twenty to thirty (20-30) minutes before their shift began, and before they were permitted to clock-in, so Plaintiff TUEROS and Class Members could be assigned their tasks of work for that day. As a result, Plaintiff TUEROS worked an additional three (3) hours each week, all of which were overtime hours, which were entirely uncompensated.

33. Plaintiff and Class Members similarly suffered from Defendant's policy of time shaving.

34. Additionally, Defendant would intermittently, for approximately fifteen (15) paychecks a year, pay Plaintiff TUEROS at a straight time rate for all hours worked including overtime hours. Plaintiff and Class Members, Plaintiffs similarly suffered from Defendant's policy of failing to pay overtime premiums.

*Claims of HERMEL LOPEZ*:

35. On or about February 17, 2017, Plaintiff, HERMEL LOPEZ, was hired by Defendant and/or its predecessors, as applicable, to work as a handyman at Defendant's Plaza del Sol location, with an address of 37-16 108th Street, Corona, NY 11368, where he continues to work. As part of Plaintiff LOPEZ's duties, he works at all locations on an as needed basis. The locations to which Plaintiff LOPEZ is routinely transferred to work include the following:

    a) **Boricua Community Health Center** - 3209 Third Avenue, Bronx NY 10451
    b) **Plaza Del Castillo Health Center** - 1515 Southern Boulevard, Bronx, NY 10460
    c) **El Nuevo San Juan** – 1065 Southern Boulevard, Bronx, New York 10459
    d) **Urban Health Plan Dental Services at Kips Bay** - 1930 Randall Avenue, Bronx, NY 10473
    e) **Simpson Pavilion** - 1054 Simpson Street Bronx, NY 10459

36. Throughout Plaintiff LOPEZ's employment, Plaintiff LOPEZ was scheduled to work from 7:00 AM to 4:00 PM six (6) days a week, for an worked an average of fifty-four hours a week.

37. Throughout his employment, Plaintiff LOPEZ was not compensated for all hours worked. Plaintiff LOPEZ was instructed to clock-out for meal breaks.  On more than half of his work days Plaintiff LOPEZ was unable to take a meal break due to his workload.   On days that Plaintiff LOPEZ did not take a break and she did not punch out; Defendant would still automatically deduct one hour from his pay. As a result, Plaintiff worked at least three hours each week, all of which were overtime hours, which were entirely uncompensated.

38. Two-to-three times per week, Plaintiff LOPEZ would sign out, and only after signing out for the day, would be asked to continue working on tasks on an as needed basis.  As a result of Defendant's scheme Plaintiff and Class members, who were similarly asked to work past their scheduled shifts, would an additional one to two (1-2) uncompensated hours each week.

39. Moreover, Defendant required Plaintiff LOPEZ and Class Members to appear for their scheduled shifts twenty to thirty (20-30) minutes before their shift began, and before they were permitted to clock-in, so Plaintiff LOPEZ and Class Members could be assigned their tasks and their locations of work for that day. As a result, Plaintiff LOPEZ worked an additional two three hours each week, all of which were overtime hours, which were entirely uncompensated.

40. Plaintiff and Class Members, Plaintiffs and Class members similarly suffered from Defendant's policy of time shaving.

41. Plaintiff LOPEZ and Subclass Members would be required to transfer supplies in their personal vehicles to other locations.  At no point did Defendants, reimburse Plaintiff LOPEZ or Subclass Members for expenses incurred, such as gas, tolls and vehicle maintenance.

42. Based on their observations and conversations with other employees, including those at other locations, Plaintiffs and Class members similarly suffered from Defendant's policy of time shaving.

43. Defendant knowingly and willingly failed to pay Plaintiffs and Class members regular and overtime wages for all hours worked due to time shaving.

44. Due to Defendant's time shaving policies, Defendant provided Plaintiffs and Class Members with paystubs which did not contain accurate information about in violation of the New York Labor Law.

45. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs and members of the Class in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

46. Plaintiffs reallege and reaver Paragraphs 1 through 45 of this class and collective action Complaint as if fully set forth herein.

47. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

49. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.00.

50. At all relevant times, Defendants engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for all of their hours worked in excess of forty (40) hours per workweek, due to a policy of time shaving.

51. At all relevant times, Defendants engaged in a policy and practice of refusing to reimburse tools of the trade expenses incurred by employees as part of their employment with Defendants.

52. Records concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

53. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

54. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

55. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premium, and an equal amount as liquidated damages.

56. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

57. Plaintiffs realleges and reavers Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. At all relevant times, Plaintiffs and Class members were employed by the Defendant within the meaning of the New York Labor Law, §§2 and 651.

59. Defendant willfully violated the rights of Plaintiffs and Class members, by failing to pay Plaintiffs and Class members the proper overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

60. At all relevant times, Defendants engaged in a policy and practice of refusing to reimburse tools of the trade expenses incurred by employees as part of their employment with Defendants.

61. Defendant willfully violated the rights of Plaintiffs and Class members, by practicing a policy of time-shaving, in violation of the New York Labor Law.

62. Defendant failed to provide proper wage statements to Plaintiffs and Class Members with every wage payment, as required by the NYLL § 195.

63. Defendants failed to provide proper spread of hours premiums to Plaintiffs and Class members.

64. Due to the Defendant's New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendant their unpaid overtime, statutory damages, reasonable attorneys' fees, and costs and disbursements of the action.

65. Records, if any, concerning the number of hours worked by Plaintiffs and Class Members and the compensation paid to Plaintiffs and Class Members should be in the possession and custody of the Defendant. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs, and Class Members respectfully requests that this Court grant the following relief:

   a. A declaratory judgment that the practices complained of herein are unlawful under the the New York Labor Law;

   b. An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

   c. An award of unpaid overtime compensation due under the New York Labor Law;

   d. An award of unpaid hours due to a policy of time shaving due under the New York Labor Law;

   e. An award of unpaid spread of hours premium;

f.  An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay regular and overtime compensation pursuant to the New York Labor Law;

g.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.  An award of statutory penalties, and prejudgment and post-judgment interest;

i.  Certification of this case as a class action pursuant to C.P.L.R. § 901;

j.  Designation of Plaintiff as Representatives of the Class;

k.  Designation of Plaintiff's counsel of record as counsel for the Class; and

l.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 19, 2021

>Respectfully submitted,
>
>LEE LITIGATION GROUP, PLLC
>CK LEE, Esq.
>Anne Seelig, Esq.
>148 West 24th Street, Eighth Floor
>New York, NY 10011
>Tel.: 212-465-1188
>Fax: 212-465-1181
>*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*
>
>By:  */s/ CK Lee*
>         CK Lee, Esq.