UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
  CHRISTINA TUEROS and HERMEL LOPEZ,   :
                                            :
                     Plaintiffs,      :    21-cv-04525 (JMF)
                                              :
         -against-                :
                                              :
  URBAN HEALTH PLAN, INC.,           :
                                            :
                      Defendant.     :
------------------------------------------------------------- x

 

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL FLSA CERTIFICATION

 

CLIFTON BUDD & DeMARIA, LLP
Attorneys for Defendants
The Empire State Building
350 Fifth Avenue, 61st Floor
New York, New York 10118
(212) 687-7410

**TABLE OF CONTENTS**

**Page**

# Contents

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ............................................................................................3

    1.    The Parties ......................................................................................................3

    2.    Urban's Timekeeping Systems and Processes .............................................4

    3.    Plaintiffs' inability or unwillingness to use the system correctly ...........................................................................................................6

    4.    Plaintiffs' inability to connect their claims to any broader group. ..........................................................................................................7

ARGUMENT .................................................................................................................8

    1.    216(b) Standard .............................................................................................8

    2.    Plaintiffs did not allege facts demonstrating that they are similarly situated to the       purported collective class. ...........................11

    3.    Plaintiffs' plan for notice and distribution must be rejected because its scope    and content are impermissibly overbroad. .....................................................................................................14

CONCLUSION.............................................................................................................18

i

# TABLE OF AUTHORITIES

## CASES

*Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) ................................................................................................................... 16

*Contrera v. Langer*, 278 F. Supp. 3d 702, 723 (S.D.N.Y. 2017) ................................. 16

*Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 169 (S.D.N.Y. 2012) ........................ 15

*Davis v. Lenox Hill Hosp.*, No. 03-CV-3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Jan. 8, 2010 ............................................................................................ 9

*Feng v. Hampshire Times*, No. 14-CV-7102 (SHS)(JLC), 2015 WL 1061973, at *3 (S.D.N.Y. Mar. 11, 2015) ..................................................................................... 10

*Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518 (JMF), 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) ..................................................................................... 10

*Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015) .................... 15

*Giurovich v. Emmanuel's Marketplace*, Inc., 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) ................................................................................................................... 10

*Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) .............................. 9

*Guo v. Tommy's Sushi Inc.*, No. 14 CIV. 3946 PAE, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) ..................................................................................... 11

*Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012) ................................................................................................................... 14

*Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009) ................................................................................ 17

*Hoffman v. Sbarro*, 982 F. Supp. 249,261 (S.D.N.Y. 1997) ........................................ 9

*Kwan v. Sahara Dreams Co. II Inc.*, No. 17CIV4058RASLC, 2020 WL 10575397, at *6 (S.D.N.Y. May 5, 2020) ............................................................... 12

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) .......................... 16

*Levinson v. Primedia Inc.*, No. 02-CV-2222(CBM), 2003 WL 22533428, at *1-2 (S.D.N.Y. Nov. 6, 2003) ..................................................................................... 10

*Martin v. Sprint/united Mgmt. Co.*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *4 (S.D.N.Y. Jan. 4, 2016) ..................................................................................... 9

*Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016) ........................................................................................................ 16

*Morales v. Plantworks, Inc.*, No. 05-CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) ................................................................................. 10

*Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012) ............................. 14

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir.2010) ........................................................................ 8

*Nahar v. Dozen Bagels Co. Inc.*, No. 15-CV-1613 (ALC)(FM), 2015 WL 6207076, at *2 (S.D.N.Y. Oct. 20, 2015) .............................................................. 9

*Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ........................................................................ 16

*Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322 (SJ)(MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) ........................................................................ 10

*Ramos v. PJJK Rest. Corp.*, No. 15-CV-5672 (PKC), 2016 WL 1106373, at *5 (S.D.N.Y. Mar. 10, 2016) ................................................................................ 17

*Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) .............................................................................. 10

*Sanchez v. JMP Ventures*, L.L.C., No. 13-CV-7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) ............................................................................. 9

*Sanchez v. JMP Ventures*, L.L.C., No. 13-CV-7264(KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) ............................................................................. 11

*Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 355 (S.D.N.Y. 2017) .......................... 17

*Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 463 (S.D.N.Y. 2011) .............................. 13

**STATUTES**

29 U.S.C. § 216(b) ............................................................................................................................ 8

## PRELIMINARY STATEMENT

Defendant Urban Health Plan, Inc. ("Defendant" or "Urban") submits this memorandum of law in opposition to Plaintiffs' motion for conditional FLSA certification of a class of "all non-exempt employees, including phlebotomists, nurses' aides, technicians, patient service representatives, therapists, community health workers, handymen, and janitors, employed by Defendants within the last six (6) years."

Plaintiffs' papers do not support conditional certification of this broadly-defined class. The record evidence conclusively shows that the alleged FLSA violations of which Plaintiffs complain are not the result of common practices applicable to all of Urban's non-exempt employees. Defendants' papers include declarations from various managers and line staff across various Urban departments and locations, in addition to policy documents and reports from Urban's timekeeping system. This record evidence demonstrates a few things: (1) Urban's timekeeping system has a multi-staged process whereby an employee may notate any unrecorded time into the system in the first instance and then verify that their manager approved all of their notated working hours, (2) Urban employees who utilize these functions as per Urban policy report having no issue related to unrecorded or unpaid time, and (3) Plaintiffs' failed or refused to notate timely the massive amounts of unrecorded time they are now claiming in this action, and (4) the circumstances that allegedly caused Plaintiffs to work these unrecorded hours were particular to their situation at their job site, and thus not reflective of any broader practice of alleged wage theft.

Defendants vigorously dispute Plaintiffs' substantive allegations, but that is not before the Court on this motion. What matters here is that Plaintiffs have not, because they cannot, shown that their defined class of "all non-exempt employees" are "similarly situated" concerning the

FLSA violations alleged in this action.  Plaintiffs offer declarations describing their own alleged experiences.  And then, in the most vague and conclusory fashion, Plaintiffs claim to know that other unidentified employees of Defendants were subjected to the same alleged FLSA violations.

Plaintiffs' declarations do not satisfy the law of this Circuit regarding 216(b) conditional certification.  The courts of this Circuit consistently require an FLSA plaintiff to set forth the "who-what-when-where-and-why" that support their own conclusions as to how others were paid.  Plaintiffs' declarations offer only conclusory assertions of observations and conversations with unidentified coworkers—which the courts have routinely found insufficient for conditional certification under the FLSA. Most notably, Plaintiff suggest generally that some other employees were dissatisfied with their pay for unknown or unspecified reason.  But Plaintiffs fail even to try to connect *the reasons* they say they were shorted time and pay to any other employee—let alone to all the non-exempt employees across all locations and departments. Therefore, Plaintiffs' bare-bones declarations do not suggest the alleged pay practices concern anyone other than Plaintiffs themselves.  Moreover, Plaintiffs' supposition about how payroll is approved and processed at other locations and in other departments is contrary to the record evidence that conclusively shows the alleged pay violations were not applicable to "all non-exempt employees."

As explained further herein, the Court should therefore deny this motion in its entirety.

## STATEMENT OF FACTS

1.    **The Parties**

Urban Health Plan, Inc., ("Urban") is a federally qualified community health center

licensed as a diagnostic and treatment center under Article 28 of the New York State Public

Health Law and Article 31 of the New York State Office of Mental Health and accredited by the

Joint Commission. *See* https://www.urbanhealthplan.org/our-history/  Urban provides

comprehensive and affordable primary and specialty health care services to the Hunts Point,

Mott Haven and Morrisania sections of the Bronx, Central Harlem and Corona, Queens. *Id.*

Urban's facilities include a main site, eleven satellite health centers, a mental health facility,

twelve school health programs, three part-time facilities, and six administrative/program sites.

*Id.*

Urban is a not-for-profit system that provides care to patients, regardless of their ability to

pay. *See* https://www.urbanhealthplan.org/our-history/   Urban provides comprehensive and

affordable primary and specialty health care services to all the communities its serves, including

the Latino, African-American, South Asian and West African communities, as well as other

emerging communities. *Id.*

Christina Tueros is a former employee of Urban.  Tueros was a Patient Service

Representative assigned to Urban's Plaza del Sol Family Health Center in Corona, Queens, NY.

Hermel Lopez ("Lopez") is a former employee of Urban.  Tueros was a Handyman

primarily assigned to Plaza del Sol—though he was occasionally assigned to cover other

locations on a temporary basis.

Diana Rodriguez ("Rodriguez") is a former employee of Urban.  Rodriguez was a

Phlebotomist assigned to Plaza del Sol.  Rodriguez has not formally joined this action as either a

named plaintiff or an opt-in.  However, Rodriguez is the named plaintiff in a parallel state court action, *Rodriguez v. Urban Health Plan, Inc.*, Queens County Supreme Court Index No. 720017/2019, where she is represented by the same attorneys representing Tueros and Lopez in this action, and where she asserts claims identical to the claims asserted in this action.  Rodriguez has left her parallel state court action completely inactive since her lawyers filed this action on behalf of Tueros and Lopez.  (Ex. A; Ex. B).

For ease of use, these papers refer to Tueros, Lopez and Rodriguez together as "Plaintiffs."

**2.     Urban's Timekeeping Systems and Processes**

Paylocity is an integrated payroll system that Urban uses to record time and attendance, process payroll, generate paychecks, remit payroll taxes and voluntary deductions, file quarterly and annual returns, and generate year-end tax statements.  (Ex. D, pp. 167-185; Ex. H, ¶2).

Urban's processes for payroll preparation, including processes for clocking in and out and approving time are set forth in Urban's Finance & Accounting Policy and Procedures Manual. (Ex. D, pp 167-185).

All employees are required to utilize Paylocity in accordance with Urban's processes. Exempt employees generally punch once or twice per day.  (Ex. D, pp 168-185).  Non-exempt employees punch four times per day, representing time in, lunch out, lunch in, time out.  *Id.* Urban's Payroll Department provides mandatory training regarding Paylocity before to all associates prior to using the Paylocity system.  (Ex. D, ¶168; Ex. H, ¶6; Ex. I, 2; Ex. J, ¶3; Ex. K, ¶6; Ex. L, ¶4; Ex. M, ¶ 5; Ex. N, ¶2; Ex. P, ¶3; Ex. Q, ¶3).

Notably, Urban's policy sets forth that the purpose of the Paylocity system is not simply to track working hours, but to capture all of the employee's time on the premises—whether working time or not.  (Ex. D, pp 170)("The purpose of a time clock is to record specific hours the

associate is on the premises, in the office or held accountable for productivity"). Therefore, the system preloads employee schedules to measure against the employee's punched time. (Ex. D, p. 170). Where there is a variance between the punched time and the scheduled time, the system flags those punches for managerial review. (Ex. H, ¶6; Ex. I, 2; Ex. J, ¶3; Ex. K, ¶6; Ex. L, ¶4).

To ensure that employees are paid for working time beyond their scheduled hours—but not paid for non-working time beyond their scheduled hours—Paylocity contains an Employee Comments feature where the employee may explain any discrepancies between the punches and the schedule. (Ex. D, ¶176; Ex. I, 3; Ex. J, ¶7; Ex. L, ¶3; Ex. M, ¶ 4; Ex. N, ¶4; Ex. P, ¶4; Ex. Q, ¶3). Part of the orientation that Payroll provides to the staff includes instructing the employees on (1) the requirement to document any changes to the schedule in the comments portion of Paylocity, and (2) showing them how to do so.   Additionally, Paylocity allows the employees to review their approved electronic timecard before it is submitted for processing, and to click an option for further managerial review if the employee perceives any issues or inaccuracies. (Ex. H, ¶6; Ex N, p. 7).

Payroll is reviewed by managers at the departmental level across each of Urban's locations and facilities. (Ex. H, ¶5; Ex. I, 2; Ex. J, ¶2; Ex. K, ¶3; Ex. L, ¶6). Managerial review involves, for each employee in the department, checking all of the employee's punches for completeness and ensuring that any variance between the scheduled hours and punched hours are explained, documented and, where appropriate, approved. *Id.*

Urban's Payroll Department pulls data from Paylocity for processing. (Ex. H, ¶4). The Payroll Department is not responsible for authorizing or approving changes to punch data. (Ex. H, ¶5). To the contrary, if Payroll identifies a discrepancy regarding any particular punch, Payroll's role is limited to communicating with the individual manager to request clarification or

5

follow-up.  *Id.*  In other words, Payroll does not change or fix punch data received from the several departments.  *Id.*

### 3.    Plaintiffs' inability or unwillingness to use the system correctly

Urban employees who comply with the Urban's payroll processes report having no issues or complaints related to unrecorded or unpaid time.  (Ex. M, Ex. N; Ex. O; Ex. P; Ex. Q; Ex. R; Ex. S).  Plaintiffs, on the other hand, claim that their time was routinely under-recorded and underpaid.

Lopez, for example, says that his time was chronically under-recorded because he was solely responsible for opening the building pre-shift at Plaza del Sol whenever he was on the schedule.  (Ex. F, pp. 49-50).  Yet a review of Paylocity records shows that Lopez recorded a total of fifteen comments in Paylocity in a nearly three-year period.  (Ex. T).  Moreover, none of those comments seem to relate to unrecorded pre-shift time or an inability to use the time clock pre-shift.  *Id.*

Likewise, Tueros says she regularly worked past her scheduled lunch and shift breaks because Plaza del Sol was chronically understaffed.  Yet Tueros logged a total of only 71 total comments over a five-year period.  (Ex. S).  And most of those comments relate to missed punches that Tueros had to explain.  *Id.*  Further to that observation, Tueros's manager counseled Tueros about the frequency of her missed punches, and, in so doing, specifically instructed her to use the notes function in Paylocity to input any missed punches to ensure she got paid properly.  (Ex. S).

Similarly, Rodriguez also claims that chronic understaffing at Plaza del Sol caused her regularly to work through lunch and past her scheduled shift break.  (Ex. G, pp. 66-69). Yet Rodriguez entered only 62 total comments into Paylocity over a five-year period.  (Ex. U).

6

4.     **Plaintiffs' inability to connect their claims to any broader group.**

Plaintiffs submit only their own declarations in this motion.  Although Plaintiffs claim that

other Urban employees complained generally about their pay during the relevant time period,

Plaintiffs offer no statements or evidence from any other "non-exempt employee" to support this

motion.  In their own declarations, Plaintiffs offer vague and conclusory summaries of

conversations with persons who are unidentified or partially identified—but do claim that any

other worker experienced the same alleged violations that they experienced.  To the contrary, at

deposition, each of the Plaintiffs acknowledged that the circumstances allegedly resulting in their

underpayment of wages were specific to them.  For example, Lopez testified as follows:

> Q. Okay. And that issue of you getting skimmed because you had
> to come early to open the door, that was an issue specific to you,
> correct?
>
> A. Yes. I was the only facility worker. It was up to me to get these
> medical workers in. If not, they'd call the office and filed
> complaints that they're leaving us outside. It's happened once or
> twice.

(Ex. F, pp. 49-50).

Tueros testified that when requested to stay past her scheduled shift break, she took it upon

herself to punch out and then keep working even though no one asked her to do that.  (Ex. E, pp.

38-39).  And Tueros further testified that her issues with unrecorded time only existed because of

a single manager at her job site:

> Q:  Is that your testimony, as you sit here now, that your time for
> the period that you were a Community Health Worker is not an
> issue for you?
>
> A.  It wasn't an issue, no.
>
> Q.  And is that still the case today.
>
> A.  That's still the case.
>
> Q.  Okay. Same for both locations, Plaza del Sol and the Bronx,
> same answer?

> A.  That's correct, only because I was being -- I had different
> supervisors and a different, um, director.

(Ex. E, p. 76).

Similarly, Rodriguez claims that her supervisor directed her to work off the clock and also acknowledges that her specific supervisor was the only person at Urban to make such a request of her:

> Q:  Was there anyone else at Urban Health Plan other than Maria
> who asked you specifically to punch out and then keep working
> after you punched out?
>
> A:  No.

(Ex. G, p 69).

On these facts, the Court should deny Plaintiffs' motion in its entirety.  Plaintiffs fail to identify any employees who are similarly situated to them as relates to any specified pay practice.  Rather, Plaintiffs' alleged harm, if any harm was suffered, was caused by individualized circumstances, i.e., the particular working conditions at Plaintiffs' job site, as well as Plaintiffs' own inaction in failing to use the several features built into Paylocity to capture and pay unrecorded time.

## ARGUMENT

### 1.    216(b) Standard

Section 216(b) of the FLSA authorizes employees to maintain collective actions where they are "similarly situated" with respect to the alleged violations of the Fair Labor Standards Act. 29 U.S.C. § 216(b); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir.2010). Similarly situated employees must "opt in" to an action by filing a "consent in writing to become ... a party." 29 U.S.C. § 216(b).

The Second Circuit has adopted a two-step method of certification in an opt-in collective action under the FLSA. *Myers*, 624 F.3d at 554-55; *see Martin v. Sprint/united Mgmt. Co.*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *4 (S.D.N.Y. Jan. 4, 2016) (collecting cases). At the first step, the district court must make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555. To satisfy their burden at this first step and achieve conditional certification, plaintiffs must make only a " 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.' " *Id.* (*quoting Hoffman v. Sbarro*, 982 F. Supp. 249,261 (S.D.N.Y. 1997) ).

"Although the FLSA itself does not define the term "similarly situated," courts require that there be a "factual nexus between the claims of the named plaintiff and those who have chosen [or might potentially choose] to opt-in to the action." *Nahar v. Dozen Bagels Co. Inc.*, No. 15-CV-1613 (ALC)(FM), 2015 WL 6207076, at *2 (S.D.N.Y. Oct. 20, 2015) (*quoting Davis v. Lenox Hill Hosp.*, No. 03-CV-3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Jan. 8, 2010) (internal quotation marks omitted) ). "The relevant issue is not whether the named plaintiffs and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA, *Id.* (*citing Hoffman*, 982 F. Supp. at 261).

While only a "modest factual showing" is required, the burden on plaintiffs "is not non-existent and the factual showing, even if modest, must still be based on some substance." *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) (internal citations omitted); *see Sanchez v. JMP Ventures*, L.L.C., No. 13-CV-7264 (KBF), 2014 WL 465542, at * 1 (S.D.N.Y. Jan. 27, 2014) (*citing Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386 (CM), 2012

9

WL 1514810, at *10 (S.D.N.Y. May 1, 2012) ) (explaining that "while a plaintiff's 'burden of proof is low, it is not non-existent [and] certification is not automatic.' ") (internal citations and quotation marks omitted); *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518 (JMF), 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (citation omitted). Even at the conditional certification stage, a plaintiff's burden under § 216(b) "cannot be satisfied simply by unsupported assertions," *Myers*, 624 F.3d at 555 (citation omitted), or with "conclusory allegations." *Morales v. Plantworks, Inc.*, No. 05-CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying certification where there was no support for plaintiffs' claim that they were similarly situated to other employees other than a "conclusory allegation ... that '[t]here are over 20 current and former employees that are similarly situated to Plaintiffs....'").

To obtain collective certification, Plaintiffs must support their claims "with a factual showing that extends beyond their own circumstances." *See Levinson v. Primedia Inc.*, No. 02-CV-2222(CBM), 2003 WL 22533428, at *1-2 (S.D.N.Y. Nov. 6, 2003) (denying conditional certification where plaintiffs failed to sufficiently allege that other potential plaintiffs were deprived of minimum wage and overtime compensation). Where the Plaintiffs' declarations are substantially similar in form and substance, "a demonstration of the similarity of circumstances of the existing [P]laintiffs is, of course, insufficient." *Id.* at *2.

"To meet their burden, Plaintiffs were obligated to provide 'some probative information regarding similarly situated employees such as their names, their duties[,] and their hours worked.' " *Feng v. Hampshire Times*, No. 14-CV-7102 (SHS)(JLC), 2015 WL 1061973, at *3 (S.D.N.Y. Mar. 11, 2015) (*quoting Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322 (SJ)(MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) ); *Giurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (finding a "factual nexus" between Plaintiff and

other current or former employees where Plaintiff identified by name a number of current or former meat department employees who held the same or similar positions as the Plaintiff). Alternatively, Plaintiffs can meet their burden by providing sufficient details regarding observations or conversations they had with other potential plaintiffs. *See, e.g., Sanchez v. JMP Ventures*, L.L.C., No. 13-CV-7264(KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying conditional certification where plaintiff provided only "generalized allegations" without "any detail as to a single such observation or conversation").

Plaintiffs fail to meet this standard.

## 2.   Plaintiffs did not allege facts demonstrating that they are similarly situated to the purported collective class.

Plaintiffs failed to demonstrate that they were similarly situated to the putative collective class, a showing that is necessary to receive conditional certification. The Second Circuit requires plaintiffs to show they and the putative collective class are "victims of a common policy or plan that violated the law." *Hoffman*, 982 F. Supp. at 261. *Reyes v. Nidaja*, LLC, No. 14 CIV. 9812, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015). "Declarations submitted in connection with motions for certification must allege facts showing such a nexus, not mere statements that others are similarly situated." *Id.* Plaintiff's personal knowledge and experience is crucial to establishing this nexus. *See Mata v. Foodbridge LLC*, No. 14 CIV. 8754 ER, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015).

In *Guo v. Tommy's Sushi Inc.*, No. 14 CIV. 3946 PAE, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014), the Court limited conditional class certification from all hourly-paid, non-managerial employees of the defendants, only to deliverymen employed by defendants. The

Court reasoned, "Plaintiffs' submissions d[id] not contain any allegations regarding, for example, the specific hours worked by, or the amounts paid to, other employees." *Id.* "Without more detailed factual allegations, the Court cannot conclude that other current or former employees were similarly situated victims of an illegal plan or policy." *Id.*

In *Kwan v. Sahara Dreams Co. II Inc.*, No. 17CIV4058RASLC, 2020 WL 10575397, at *6 (S.D.N.Y. May 5, 2020), the Court denied 216(b) conditional certification to plaintiff who "purport[ed] to represent an overly-broad collective action" when her personal affidavit, "include[ed] no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions or at different locations." The Court criticized the inadequacy of plaintiff's affidavit further, stating that despite plaintiff's claims that other employees "complained about the one-hour unpaid break" and about not being "compensated properly for [their] overtime hours," the mere "existence of complaints from other employees regarding pay does not suggest that Plaintiff and all of Defendants' other non-managerial employees together were victims of a common policy or plan that violated the law." *Id.*

In *Zamora v. L Plus L Prods. LLC*, No. 19CIV1506GBDRWL, 2019 WL 5460559 at *4 (S.D.N.Y. Oct. 15, 2019), the Court ruled plaintiff, formerly employed as a cook by defendant, failed to meet his burden for conditional certification because the other employees he claimed were similarly situated to him were "dishwashers and cleaners" and "no-non conclusory facts ha[d] been set forth to indicate" a common wage policy between them. The Court held that conditional certification could not be granted when plaintiff's "general, conclusory statements" concerning employees "beyond himself, … remain[ed] uncorroborated." *Id.*

As in the foregoing cases, Plaintiffs utterly fail to connect the specific reasons they claim their hours were under-recorded to any other employee of Urban.  The circumstances to which

Plaintiffs attribute their unrecorded hours were specific to them.  (Ex. F, pp. 49-50; Ex. E, p. 76; Ex. G, p 69). Lopez says he was made to wait to punch in because his specific job required him alone to report early to his job site to open the building.  (Ex. F, pp. 49-50).  Tueros says she had a problem with one specific supervisor not adjusting her time.  (Ex. E, p. 76).  And Rodriguez says she chose to punch out and continue working thereafter, even though no one told her to do that.  (Ex. G, p 69).

But equally important, Plaintiff studiously overlook a material fact as they attempt to define a class of "similarly situated employees."  Plaintiffs failed to utilize the comments feature within Paylocity to notate the massive amounts of time they say went unrecorded.  (Ex S; Ex. T; Ex. U).  Urban trains all of its employees to use the feature to ensure payment of any hours beyond the employee's scheduled hours.  (Ex. D, ¶176; Ex. I, 3; Ex. J, ¶7; Ex. L, ¶3; Ex. M, ¶ 4; Ex. N, ¶4; Ex. P, ¶4; Ex. Q, ¶3). And those employees who use the feature as directed report having no disputes over the hours or pay.  (Ex. M, Ex. N; Ex. O; Ex. P; Ex. Q; Ex. R; Ex. S). The distinction is critical.

In *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 463 (S.D.N.Y. 2011), the Court decertified plaintiffs' collective action, holding defendant's "timekeeping system and formal corporate policies are lawful under the FLSA." The Court found defendant's timekeeping system allowed for "the complete and accurate recording of all time worked by Mobility employees" and that its "official corporate policies" and practices reinforced that all uncaptured off-the-clock work could be reported through the timekeeping "adjustment feature." *Id.* at 467. The Court questioned plaintiffs' individual "use of the adjustment feature" when opt-in plaintiffs testified "they regularly received payment for work reported through the adjustment feature." *Id.* Thus,

the Court found that plaintiffs insufficiently demonstrate that they were similarly situated and failed to demonstrate defendant's "lawful policies [were] consistently violated in practice."  *Id.*

So too here, Plaintiffs chose not to use properly the time keeping system that Urban provided to ensure unrecorded time is captured and paid. They cannot now claim they speak for the many employees—across all locations and departments—who did utilize the system properly and who were not subject to the specific working conditions that Plaintiffs claim resulted in their under-recorded hours.

For all of these reasons, the Court should deny Plaintiff's motion in its entirety.

### 3.      Plaintiffs' plan for notice and distribution must be rejected because its scope and content are impermissibly overbroad.

This Court should deny Plaintiffs' motion in its entirety. But even if this Court were to decide that conditional certification is appropriate (it should not), Plaintiffs' proposed notice must be rejected because of its scope and content. Once the Court authorizes notice to the potential opt-in plaintiffs, "the district courts maintains 'broad discretion' over the form and content of the notice." *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012). The goal is "to make as many potential plaintiffs as possible aware of [the] action and their right to opt-in without devolving into a fishing expedition or imposing undue burdens on the defendants." *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012).

The proposed notice is directed at all current and former non-exempt employees, including phlebotomists, nurses' aides, technicians, patient service representatives, therapists, community health workers, handymen, and janitors employed by Defendant." For the reasons already stated,

Plaintiffs' collective action definition is far too broad and would force an undue burden on Defendant if distributed.

**A. Plaintiffs' proposed notice period should be limited.**

The notice should not be delivered to those employed within six years of the filing of the Complaint. "Three years is the maximum time period to join an FLSA collective action and no New York state class action has been certified. It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." *Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015); *Romero v. La Revise Assocs.*, L.L.C., 968 F. Supp. 2d 639, 648 (S.D.N.Y. 2013) (same). Should this Court grant Plaintiffs' Motion, the Defendant respectfully submit that delivering notice to only non-exempt Urban workers who worked within three years of this Court's decision would be appropriate.

**B. Plaintiffs' request for the putative class's contact information is overbroad.**

Plaintiffs request that Defendant produce "names, Social Security numbers, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers and dates of employment" for the broad category of employees Plaintiffs seek to certify as a collective. This request for information is overbroad and improper. This Court has said that plaintiffs are "not entitled to discovery about individual potential class members until plaintiffs have moved for and been granted class certification." *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 169 (S.D.N.Y. 2012), *objections overruled sub nom. Moore v. Publicis Groupe SA & MSL Grp.*, No. 11CIV1279ALCAJP, 2012 WL 12528637 (S.D.N.Y. Nov. 8, 2012). If certification is granted, then courts will usually order production of names and addresses of the collective. *See, e.g., Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 210

(N.D.N.Y. 2009) (noting that "plaintiffs have no need for the additional, inherently private information sought, including e-mail addresses, telephone numbers, social security numbers, and dates of birth).

### C. The Court should not grant equitable tolling.

Plaintiffs' request for a tolling order must be rejected. The statute of limitations for an FLSA collective action runs for each plaintiff until he or she files a written consent opting into the suit. *See Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 198 (S.D.N.Y. 2006). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). The doctrine of equitable tolling is applied on a "case-by-case basis to prevent inequity," and equitable tolling will be applied "where some party has been prevented in some extraordinary way from exercising his rights." *Contrera v. Langer*, 278 F. Supp. 3d 702, 723 (S.D.N.Y. 2017). In the Second Circuit, the party seeking to toll his time "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Importantly, the second prong "is only met where the circumstances that caused a litigant's delay are ***both*** extraordinary and beyond its control." *Id.* (quoting *Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016)) (emphasis added).

Where, as here, no information has been provided about the potential plaintiffs and their circumstances, the Court cannot assess whether any potential opt-in plaintiff has diligently pursued his or her rights. Therefore, Plaintiffs' request to toll the statute of limitations must be denied. *See Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 658 (S.D.N.Y. 2017) (denying equitable tolling because there was "no basis for making a ruling…any current or future

opt-in female associates' claims must be equitably tolled given that there has been no showing"
of diligence); *Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134, at *15
(W.D.N.Y. Oct. 21, 2009) (denying equitable tolling in an FLSA case because "[p]laintiffs here
have offered no allegations or proof from which this Court can conclude that a reasonably
prudent potential plaintiff would not have known of his or her right to receive overtime pay after
40 hours").

In addition, since equitable tolling is personal to the individual for whom the time will be
tolled, the named Plaintiffs in this case cannot assert a tolling argument on behalf of an unnamed
class. *See Contrera*, 278 F. Supp. 3d at 824 (emphasizing that "a district court must consider
whether the person seeking application of the equitable tolling doctrine" can establish both
prongs) (emphasis in original).

Moreover, even if Plaintiffs could assert facts to support a tolling argument on behalf of a
potential class, they have not identified any extraordinary circumstances that warrant a tolling of
the statute of limitations. "The most common circumstance where equitable tolling might apply
to FLSA actions is where the defendant has concealed the existence of a cause of action from the
plaintiffs." *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 355 (S.D.N.Y. 2017).
Although some courts have tolled the statute of limitations pending a conditional certification
motion, many courts have held that this justification "was not of such a magnitude as to warrant
tolling." *Id.*    Furthermore, Plaintiffs' tolling argument provides no evidentiary reasoning to
demonstrate the need for equitable tolling, only an unverified assertion that "courts in this and
other Circuits have increasingly granted requests for equitable tolling." *See Ramos v. PJJK Rest.
Corp.*, No. 15-CV-5672 (PKC), 2016 WL 1106373, at *5 (S.D.N.Y. Mar. 10, 2016) (denying
equitable tolling because plaintiffs' "arguments [were] vague and conclusory" and with "no

17

evidentiary basis as to why equitable tolling is warranted[.]" "Merely contend[ing] that courts

'routinely grant' requests for equitable tolling in FLSA actions" is not enough.).

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiffs' motion in its entirety, grant

Defendants' their reasonable attorneys' fees and costs, and award such other and further relief as

the Court deems proper and just. Even if the Court grants Plaintiffs' motion, it should deny

equitable tolling, limit the notice period, limit production of contact information for the putative

class, and order that the notice be disseminated in a more reasonable manner.

Dated:  February 4, 2022
        New York, New York

Respectfully submitted,
CLIFTON BUDD & DeMARIA, LLP
Attorneys for Defendants

By: _____
    Arthur J. Robb
    The Empire State Building
    350 Fifth Avenue 61st Floor
    New York, New York 10118
    (212) 687-7410